## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF NEW MEXICO

LUVELL RICKS, Individually and as next friend of
DEMETRIUS RICKS and SHADIAMOND RICKS,

      Plaintiffs,

v.                                No. Civ. 11-608 LH/LFG

NEW MEXICO ADULT PROBATION AND
PAROLE DEPARTMENT; OFFICER
ELIZABETH QUEENER; KIRSTY MULLER,
SUPERVISOR, in their individual and
representative capacities, CITY OF CLOVIS,
DETECTIVE SEAN MARTINEZ,
SERGEANT ROMAN ROMERO,
OFFICER JUSTIN LAVARY, in their individual and
official capacity,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

On January 18, 2012, Defendants City of Clovis, Sean Martinez, Roman Romero, and Justin Lavary (collectively, "the Clovis Defendants") filed a Motion for Summary Judgment (Doc. 48), seeking the dismissal of all claims against them.   On January 26, 2012, Defendants Elizabeth Queener and Kristy Muller filed a Motion to Dismiss Based on Qualified Immunity (Doc. 50). Subsequently, on April 4, 2012, Defendants New Mexico Adult Probation and Parole Department ("PPD"), Elizabeth Queener, and Kristy Muller (collectively, "the Probation Defendants") filed a Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 63).   The Court, having considered the motions, briefs, evidence, relevant law, and otherwise being fully advised, concludes that the Probation Defendants' motion for summary judgment (Doc. 63) should be granted and their corresponding motion to dismiss (Doc. 50) should be denied as moot.   The

Court concludes that the Clovis Defendants' motion for summary judgment should be granted in part and denied in part.

## I.     FACTUAL BACKGROUND[1]

On August 18, 2010, Cassandra Padilla, a clerk at the Allsup's Convenience Store in Clovis, New Mexico, reported a robbery at the store.  (Clovis Defs.' Mem. Br. (Doc. 49), Undisputed Fact ("UF") ¶ 1.)  Ms. Padilla reported that a man, who had asked for change, shoved Ms. Padilla, stuck his hand in the open cash drawer, removed some bills, and ran out of the door. (*Id.*)  The actions of the thief were caught on a security surveillance camera in the store and that video was provided to police. (*Id.*)[2]

Officers with the Clovis Police Department investigated the robbery the same day it occurred.  (Pls.' Resp. (Doc. 55), UF ¶ 1.)  Officer Steven Wright of the Clovis Police Department took the initial report and interviewed two witnesses, Ms. Padilla, and a man who lived across the street from the store, Toby Messier.   (Clovis Defs.' Mem. Br. (Doc. 49), UF ¶ 2.) Officer Wright prepared a written report and took a written statement from Ms. Padilla.   (*Id.*)

---

[1]Defendants Queener and Muller filed both a motion to dismiss and a motion for summary judgment.   After reviewing the evidence in the light most favorable to Plaintiffs, the Court concludes that the Probation Defendants' motion for summary judgment should be granted, and thus, Defendants Queener's and Muller's motion to dismiss may be denied as moot.   The following facts are therefore based on the summary judgment standard -- viewing the evidence in the light most favorable to Plaintiffs.  *See* Fed. R. Civ. P. 56.

[2]The Court has reviewed that video (*See* Clovis Defs.' Mem. Br., Ex. A-4 (Doc. 49-1).) There are three different angles by which to judge the thief's height and appearance based on his entering the front door and standing by the counter.  (*See id.*)   The video, however, does not provide a close up, clear view of the suspect's face.  (*See id.*)

Ms. Padilla, who is 5'4"tall, described the thief as being a black male "approximately 6'5", 230 pounds and is in his 30's."   (Pl.'s Resp. (Doc. 55), UF ¶ 3 and Ex. A (Doc. 55-1) at 2-3 of 6.) Mr. Messier reported that he had seen a man at the same time exit the store, get into a white single-cab pickup truck, and drive off.   (Clovis Defs.' Mem. Br. (Doc. 49), UF ¶ 2; Pl.'s Resp. (Doc. 55), UF ¶ 4.)   Mr. Messier, who himself is 6'4" tall, described the thief as a tall black male wearing a gray shirt.   (Pl.'s Resp. (Doc. 55), UF ¶ 4 and Ex. A (Doc. 55-1) at 2-3 of 6.)

After Officer Wright's completion of his report, the investigation was turned over to the Detective Division for further action and assigned to Detective Sean Martinez.   (*See* Clovis Defs.' Mem. Br. (Doc. 49), UF ¶ 3.)

The Allsup's Convenience Store manager, Anna Cardonita, viewed the video of the robbery and placed still photos of the robber at the counter of the store.   (*Id.*, UF ¶ 4.)   Ms. Cardonita, however, was not present and did not see the robbery take place at the time.   (Pl.'s Resp. (Doc. 55), UF ¶ 6.)   She learned about the robbery when she got a call from Ms. Padilla. (*Id.*)   Ms. Cardonita did not arrive at the store until after the police were already there.   (*Id.*)

On September 23, 2010, while Ms. Cardonita was on duty, a man came into the store who she believed looked like the thief from the video.   (*See* Clovis Defs.' Mem. Br. (Doc. 49), UF ¶ 4.)   Ms. Cardonita followed the man, later identified as Mr. Ricks, to his residence and then contacted the police.   (*Id.*)   She brought in a photo of the man who had been in the store that day. (*Id.*)   Ms. Cardonita showed Detective Martinez the house where the man had gone and it was the house where Plaintiff Ricks resided.   (*Id.*, UF ¶ 5.)   Nearby, Detective Martinez and Ms. Cardonita saw a white vehicle in which Plaintiff was riding.   (*Id.*)   Ms. Cardonita said it was the man whom she had followed from the store and it was the same man whom Detective Martinez

believed had committed the robbery.   (*Id.*)   Detective Martinez verified that the white vehicle

was registered to Plaintiff Ricks' girlfriend, Laushanna Engel.   (*Id.*)   Ms. Cardonita provided a

written statement to Detective Martinez, stating her belief that the man who came in the store on

September 23, 2010, was the same man who stole from her store on August 18, 2010.   (*See id.*, UF

¶ 4.)

That same day, Detective Martinez provided a photo lineup to Ms. Padilla.   (Pls.' Resp.

(Doc. 55), UF ¶ 7.)   Ms. Padilla did not identify Mr. Ricks as the thief.   (*Id.*)

On September 24, 2010, Detective Martinez secured an arrest warrant for Plaintiff, after

first getting approval for the warrant from Assistant District Attorney ("ADA") Camille Chavez.

(*Id.*, UF ¶ 6.)   He based his conclusion of probable cause in part on his own identification of Mr.

Ricks from the surveillance video: "Upon reviewing the video I found that the individual who

entered the store was a heavy set black male who appeared to be Luvell Ricks[.] I recognized

Luvell as a subject whom I have had previous dealings with in regards to domestic violence just

one block away at 1010 Connelly."   (Pls.' Resp., Ex. D (Doc. 55-4) (Aff. for Arrest Warrant) at 2.)

Detective Martinez also included in his affidavit facts regarding Ms. Cardonita's independent

belief that Mr. Ricks was the man in the video:

> On Thursday 9/23/10 at approximately 1345 hrs I was contacted by Allsup's #64
> Store Manager Anna Cardonita at the Clovis Police Department.   Anna stated that
> she had just observed the individual who had committed the robbery in her store on
> the morning of 8/18/10.   Anna stated that she had followed the individual[,] a
> black male who since the robbery occurred only comes into her store wearing a due
> rag and sunglasses.   Anna stated that it was the heav[y] set black male who was
> driving a white car and she would be able to show me where he drove to which was
> only one block away behind her store.   Anna had color photographs of the
> individual who committed the robbery in her store with her and she stated that it
> was the same person that had just left her store.   I then transported Anna into the
> area of 1010 Connelly and she pointed out the red brick house at this address as the
> place that the black male had gone.   (I know this to be the residence of Luvell

Ricks).

(*Id.*, Aff. for Arrest Warrant at 2-3.)

In the Affidavit for Arrest Warrant, Detective Martinez recounted Ms. Padilla's version of the crime, but he omitted Ms. Padilla's description of the height of the thief as 6'5".  (*See id.*) Detective Martinez also stated that Mr. Messier observed a black male exit the store and leave westbound in a white truck.  (*Id.*)  He omitted, however, Mr. Messier's description of the thief as "tall."  (*See id.*)  Detective Martinez also omitted Mr. Ricks' height.  (*See id.*)  Mr. Ricks is 5'7" tall.  (*Id.* at 4.)  Nor did Detective Martinez discuss in the affidavit the quality of the surveillance video or the still photographs taken therefrom.  (*See id.* at 2-4.)[3]

Detective Martinez, however, included in his affidavit the exculpatory evidence that he showed a photo lineup to Ms. Padilla that included a photograph of Mr. Ricks.  (*Id.* at 2.)  He recounted in the affidavit that Ms. Padilla "advised that it was hard to tell which one in the lineup it really was because the one who committed the robbery had longer hair," and so was unable to identify the individual due to the photographs all looking similar.  (*Id.*)  Detective Martinez also stated in the affidavit that Mr. Ricks denied any involvement in the robbery.  (*Id.* at 3.)

---

[3]The Court has reviewed the still color photograph taken from the video of Mr. Ricks on September 23, 2010, (*see* Clovis Defs.' Mem. Br., Ex. A-5 (Doc. 49-2)), and compared it to the still color photograph taken from the video of the thief on August 18, 2010, (*see id.*, Ex. A-6 (Doc. 49-2)).  Both photographs are taken from a similar angle.  Each shows the front of a black man wearing a grey shirt, standing in front of a counter.  The photographs are grainy and of poor quality, so that it is difficult to distinguish facial features of the two men or the writing on the shirts.  Exhibit A-5 is zoomed in farther than Exhibit A-6, so that it is also difficult to compare the height of the men.

In the affidavit, Detective Martinez concluded: "Based on reviewing the video and the statements made by Anna Cardonita who was able to positively identify Luvell Ricks in the photographs that she had reviewed within her store I will seek a warrant for the arrest of Luvell Ricks on the charges of robbery." (*Id.*)   Relying on the affidavit, Judge Richard Hollis made a finding of probable cause and issued the warrant. (Clovis Defs.' Mem. Br. (Doc. 49), UF ¶ 6.)

On September 24, 2010, Detective Martinez and Officer Justin Lavary went to Mr. Ricks' residence to execute the arrest warrant. (*Id.*, UF ¶ 7, and Ex. A (Doc. 49-1) at 16.)   Mr. Ricks was arrested. (*See id.*)   Because there was a small child in the residence, they waited for Ms. Engel to arrive to take care of the child. (*See id.*, UF ¶ 7; Pl.'s Resp., Ex. B (Doc. 55-2) at 7.) The officers did not draw any weapons during the course of the arrest. (Clovis Defs.' Mem. Br. (Doc. 49), UF ¶ 7.)   Plaintiff was subsequently charged with Robbery, a third degree felony, and incarcerated. (Probation Defs.' Mot. for Summ. J. (Doc. 63), UF ¶ 4.)   His bond was initially set at $10,000 cash only. (*See* Clovis Defs.' Mem. Br. (Doc. 49), Ex. A (Doc. 49-1) ("Warrant for Arrest") at 16.)

On September 29, 2010, Detective Martinez obtained a search warrant for Mr. Ricks' residence to search for the grey shirt Mr. Ricks was wearing on September 23, 2010, and which Detective Martinez believed matched the shirt worn by the thief in the surveillance video. (*See* Pls.' Resp., Ex. B (Doc. 55-2) at 8.)   During the execution of the search warrant, an officer arrested Ms. Engel for whom Detective Martinez had a warrant for harassing an Allsup's clerk in regards to Mr. Ricks's case. (*See id.*)   During the search, Detective Martinez seized a XXL grey CHAPS DENIM 1978 t-shirt. (*Id.*)

At the time of his arrest, Plaintiff was on probation for previous criminal convictions not

related to this incident.  (Probation Defs.' Mot. for Summ. J. (Doc. 63), UF ¶ 5.)   On or about September 24, 2010, Defendant Elizabeth Queener, an officer and employee of PPD and the probation officer for Mr. Ricks, was informed of Plaintiff's arrest on charges of robbery.   (*Id.*, UF ¶ 6.)   On or about October 5, 2010,[4] Officer Queener, acting as a government official and in her official capacity as a probation officer, filed a Probation Violation Report with the Court following Plaintiff's arrest, pursuant to her duties as a probation officer under N.M. Stat. Ann. § 31-21-15.[5] (*See id.*, UF ¶ 8 and Ex. C (Doc. 63-3) at 1- 3.)   Officer Queener recommended in the report that "Mr. Ricks' probation be revoked and he be sentenced to the Curry County Detention Center for the remainder of his term."  (*Id.*, Ex. C (Doc. 63-3) at 3.)   Defendant Kristy Muller, a supervisor with PPD, approved Officer Queener's actions in filing the report.  (*See id.*, Ex. D (Doc. 63-4) ¶¶ 2, 10-11.)

Once a Probation Violation Report is filed with the state court, the court has absolute discretion over the matter.  (Probation Defs.' Mot. for Summ. J. (Doc. 63), UF ¶ 13.)   Officer Queener at no time placed an arrest hold on Mr. Ricks.   (*Id.*, UF ¶ 9.)   The Honorable Stephen K. Quinn, District Court Judge for the Ninth Judicial District, State of New Mexico, signed the Probation Violation Report, finding "probable cause to arrest/hold" Mr. Ricks.   (*Id.*, Ex. C (Doc. 63-3) at 1.)   He set a bond of "$5000 cash or surety."   (*Id.*)

---

[4]Although Officer Queener's Affidavit and the Probation Violation Report give a date of October 4, 2010, for when she filed the report, the report has a file stamp from the Ninth Judicial District Court of October 5, 2010.   (*See* Probation Defs.' Mot. for Summ. J., Ex. C (Doc. 63-3) at 1- 3.)

[5]Section 31-21-15(A)(3) provides:   "At any time during probation:  . . . Upon arrest and detention [of the probationer], the director shall immediately notify the court and submit in writing a report showing in what manner the probationer has violated the conditions of release.   N.M. Stat. Ann. § 31-21-15(A)(3).

Officer Queener's and Ms. Muller's actions were performed with the knowledge and understanding that Plaintiff was arrested after a thorough and lawful investigation, and pursuant to a valid arrest warrant.  (*Id.* (Doc. 63), UF ¶ 11 and Ex. D (Doc. 63-4) ¶ 11.)   Neither the PPD nor its officers took part in investigating the robbery Mr. Ricks was accused of committing.   (*See id.*, Ex. D (Doc. 63-4) ¶ 12.)   PPD's policies, however, provide that "all arrests and violations of offenders supervised under probation and/or parole shall be reviewed by the field officer with the supervisor, be investigated immediately, and promptly reported to the court, Parole Board and/or hearing officer."  (Pls.' Resp., Ex. A (Doc. 66-1) at 3 of 6.)   PPD procedures further provide:

> The Report of Violation (Probation) Form . . . shall be submitted immediately after an independent investigation is completed by the supervising probation/parole officer, not to exceed five (5) working days from the date the PPO is made aware of the violation . . . . The PPO should not rely entirely on police reports, but rather use them only as a source of information.
>
> a.    The investigation should include interviews, record checks and other independent research in each case and a concise report should then be prepared.

(*Id.*, Ex. B (Doc. 66-2) at 2 of 4.)   PPD and its officers do not charge individuals with new crimes. (*See* Probation Defs.' Mot. for Summ. J., Ex. B (Doc. 63-2) ¶ 13.)

On October 7, 2010, Plaintiff posted bond and was released from jail.   (*Id.* (Doc. 63), UF ¶ 10.)  Plaintiff's bond was set by, and at the sole discretion of, the judge, and at no time did Officer Queener request a bond be placed on Mr. Ricks or have any input into the amount of the bond set.   (*See id.*, Ex. B (Doc. 63-2) ¶ 14.)

On October 8, 2010, ADA Camille Pedrick-Chavez filed a Motion to Revoke Probation, requesting the Court to revoke Mr. Ricks's probation based on the violation of conditions of probation as set forth in the Report of Violation (Probation) filed on October 5, 2010.   (Pls.' Resp.

Mem. in Opp'n to Probation Defs.' Mot. to Dismiss, Ex. C (Doc. 57-3) ("Motion to Revoke Probation").)   On October 14, 2010, the District Attorney's Office, prior to the preliminary hearing, dismissed the Robbery charge against Mr. Ricks and he was not further prosecuted.   (*See* Clovis Defs.' Mem. Br. (Doc. 49), UF ¶ 8; Pls.' Resp. Mem. in Opp'n to Probation Defs.' Mot. to Dismiss, Ex. D (Doc. 57-4) ("Notice of Dismissal").)   On October 22, 2010, ADA Pedrick-Chavez filed a Notice of Dismissal, dismissing without prejudice the Probation Violation Report filed on October 5, 2010, and the Motion to Revoke Probation filed on October 8, 2010, because "the underlying charge in this matter was dismissed."   (Pl.'s Resp. Mem. in Opp'n to Probation Defs.' Mot. to Dismiss, Ex. E (Doc. 57-5) ("Notice of Dismissal").)

On June 10, 2011, Plaintiff Ricks filed a Complaint in state court arising from his arrest and incarceration.   (*See* Notice of Removal, Ex. 1 (Doc. 1-1) ("Complaint").)   After removal, he filed a First Amended Complaint (Doc. 33) alleging the following ten causes of action: (1) unconstitutional arrest and excessive use of force under 42 U.S.C. § 1983 against Defendants Martinez and Lavary arising from Mr. Ricks' arrest on September 24, 2010; (2) unconstitutional detention under § 1983 against Defendants Martinez, Lavary, and Queener arising from Mr. Ricks' September 24, 2010 arrest and against Defendant Queener for failing to act promptly to release the probation violation hold against Mr. Ricks following the dismissal of the robbery charge; (3) negligence against Defendants City of Clovis and Martinez for breach of their duty to conduct a proper investigation; (4) negligence against Defendants PPD and Queener for breach of their duty to conduct a proper investigation and to release timely their administrative hold on Mr. Ricks; (5) negligent failure to supervise and to train against Defendants City of Clovis, Sergeant Roman Romero, PPD, and Muller; (6) assault against Defendants Martinez and Lavary arising

from Mr. Ricks's September 24, 2010 arrest in which they allegedly displayed and drew firearms;

(7) wrongful arrest and false imprisonment against all Defendants; (8) malicious abuse of process

against all Defendants; (9) intentional infliction of emotional distress against Defendants City of

Clovis, Martinez, and Lavary arising from Mr. Ricks's arrest and the brandishing and directing of

weapons at his children; and (10) negligent infliction of emotional distress against Defendants City

of Clovis, Martinez, and Lavary arising from the severe shock Mr. Ricks' minor children allegedly

suffered in seeing their father arrested.

## II.      STANDARD

Under the doctrine of qualified immunity, "government officials performing discretionary

functions generally are shielded from liability for civil damages insofar as their conduct does not

violate clearly established statutory or constitutional rights of which a reasonable person would

have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).   When a defendant raises the

qualified immunity defense on summary judgment, the burden shifts to the plaintiff to meet a strict

two-part test.   *See Nelson v. McMullen*, 207 F.3d 1202, 1206 (10th Cir. 2000).   The plaintiff must

demonstrate that (1) the defendant violated a constitutional or statutory right and (2) the right was

clearly established at the time of the conduct.   *Id.*   A court has discretion in deciding which of the

two prongs of the qualified immunity analysis should be addressed first in light of the

circumstances in the case.   *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

As to the first inquiry, the question is whether the facts alleged, which are taken in the light

most favorable to the party asserting the injury, the officer's conduct violated a constitutional right.

*See Olsen v. Layton Hills Mall*, 312 F.3d 1304, 1312 (10th Cir. 2002).   The second inquiry is

more specific than whether the officer's conduct violated a constitutional right; the question is

10

whether it would be clear to a reasonable officer that his conduct was unlawful under the circumstances he confronted.   *Saucier v. Katz*, 533 U.S. 194, 202 (2001).   "[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."   *Wilson v. Layne*, 526 U.S. 603, 615 (1999) (citing *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)).   Moreover, "in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains."   *Medina v. City & County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).   If the plaintiff establishes both elements of the qualified immunity test, then the burden shifts back to the defendant to show there are no genuine issues of material fact and that he is entitled to judgment as a matter of law. *Nelson*, 207 F.3d at 1206.

Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."   *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (internal quotation omitted).     "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party."   *Id.* (internal quotations omitted).

## III.   ANALYSIS

### A.   Clovis Defendants' Motion for Summary Judgment (Doc. 48)

As an initial matter, "Plaintiffs agree to dismiss all claims against Defendant Lavary without prejudice."   (Pls.' Resp. (Doc. 55) at 4 n.1.)   Defendants request, based on the lack of evidence against Defendant Lavary, that "he should be fully and finally dismissed from this

lawsuit." (Clovis Defs.' Reply (Doc. 58) at 7.) The only evidence against Defendant Lavary is that he accompanied Defendant Martinez and helped execute the arrest warrant against Mr. Ricks on September 24, 2010. There is no evidence that Defendant Lavary had any part in the investigation leading up to the issuance of the arrest warrant. Nor is there evidence indicating Defendant Lavary knew or should have known there may be a lack of probable cause to arrest Mr. Ricks. It is also undisputed that the officers did not draw any weapons during the course of the September 24, 2010 arrest. The Court concludes that Defendant Lavary is entitled to summary judgment and dismissal of the case against him with prejudice. The Court will proceed to the merits of the claims against the remaining Defendants.

### 1.   Section 1983 Claims

#### a.   Unconstitutional Arrest and Detention (Counts 1 and 2)

"Where the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner or . . . in 'objective good faith.'" *Messerschmidt v. Millender*, 132 S.Ct. 1235, 1245 (2012) (quoting *United States v. Leon*, 468 U.S. 897, 922-23 (1984)). The Supreme Court, however, has "recognized an exception allowing suit when 'it is obvious that no reasonably competent officer would have concluded that a warrant should issue.'" *Id.* (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

To defeat a qualified immunity defense on a false arrest claim where a judge has issued an arrest warrant, the plaintiff must show that the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable. *See Malley*, 475 U.S. at 344-45; *Poolaw v. Mercantel*, 565 F.3d 721, 734 (10th Cir. 2009). "[T]he threshold for

establishing this exception is a high one." *Messerschmidt*, 132 S.Ct. at 1245.   "Probable cause for an arrest warrant is established by demonstrating a substantial probability that a crime has been committed and that a specific individual committed the crime." *Wilkins v. DeReyes*, 528 F.3d 790, 801 (10th Cir. 2008) (quoting *Wolford v. Lasater*, 78 F.3d 484, 489 (10th Cir. 1996)).

Additionally, an officer is not shielded from liability for a Fourth Amendment violation if, in support of an arrest warrant, he knowingly, or with reckless disregard for the truth, includes false statements in the affidavit or omits from the affidavit information that, if included, would have vitiated probable cause. *Taylor v. Meacham*, 82 F.3d 1556, 1562 (10th Cir. 1996).   For § 1983 liability to attach, the official's falsification or omission of evidence must have been knowing or reckless. *See Pierce v. Gilchrist*, 359 F.3d 1279, 1299 (10th Cir. 2004).   For a plaintiff to demonstrate recklessness by an officer, there must be evidence that the officer entertained serious doubts as to the truth of his allegations, and a factfinder may infer reckless disregard from circumstances evincing obvious reasons to doubt the veracity of the allegations. *Beard v. City of Northglenn*, 24 F.3d 110, 116 (10th Cir. 1994).   The failure to investigate a matter fully rarely suggests a knowing or reckless disregard for the truth; to the contrary, it generally is considered mere negligence. *Id.*

"If evidence is falsified or withheld, the probable cause determination is made by considering whether, excluding the falsified inculpatory evidence or including the withheld exculpatory evidence, probable cause existed to prosecute." *McCarty v. Gilchrist*, 646 F.3d 1281, 1286 (10th Cir. 2011).   A jury should determine the issue of the existence of probable cause "if there is room for a difference of opinion concerning the facts or the reasonable inferences to be drawn from them." *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993).   A court

13

should make a conclusion that probable cause existed as a matter of law only when no reasonable jury could find that the officer did not have probable cause to arrest the plaintiff.   *See id.*

This is not a case where no reasonably well-trained officer would have known that the Affidavit for Arrest Warrant on its face failed to establish probable cause so as to render an officer's reliance on it unreasonable.   The Affidavit contained both Defendant Martinez's and Ms. Cardonita's independent beliefs that the suspect in the video of the robbery was Mr. Ricks, whom both had seen in person and whom they knew lived in the neighborhood.[6]   Those facts, on their face, are sufficient to establish probable cause.   Instead, the issue here is whether Defendant Martinez knowingly, or with reckless disregard for the truth, included false and misleading statements in the affidavit or omitted material information from the affidavit that, if included, would have vitiated probable cause.

Defendant Martinez omitted from the affidavit the disparity between Ms. Padilla's and Mr. Messier's height descriptions of the thief and Mr. Ricks's actual height.   Ms. Padilla, who stood near the robber, separated by a counter, described the thief as 6'5", information confirmed by Mr. Messier, who at 6"4' tall, identified the thief as "tall."   It is undisputed that Mr. Ricks is only 5'7", a significant height discrepancy between the eyewitness identifications.

The significance to afford this omission of height discrepancy increases when coupled with the omission of the quality of the surveillance video and photographs upon which Defendant Martinez and Ms. Cardonita based their identifications.   Defendants themselves acknowledge that "the quality of the video is not sterling."   (Clovis Defs.' Mem. Br. (Doc. 49) at 7.)   Ms.

---

[6]Defendants also argue that the fact that Mr. Ricks was seen in a white vehicle "has some bearing."   The Court disagrees.   The suspect left in a white truck while Mr. Ricks was seen in a white "1988 Chevrolet CCL," described merely as a vehicle, not a truck.   A car versus a truck hardly qualifies as a matching vehicle that would bear on the probable cause analysis.

Cardonita's identification was based on the surveillance video where the suspect's face was not clear and on a still photograph from the video that was very grainy.  Defendant Martinez knew that the identification by Ms. Cardonita was based on the same grainy, poor quality surveillance video that Defendant Martinez had seen.  Defendants nevertheless argue that the video was of sufficient quality that both Defendant Martinez and Ms. Cardonita reached the same conclusion of the suspect's identity independently.

The Court has reviewed the video and the photographs and finds that a question of fact exists as to whether they are of such poor quality that no reasonable person could make a positive identification from them.  Although the video and photographic evidence are clear enough to show a heavy set black male committed the robbery, it is a fact question as to whether a reasonable person could identify a *particular* heavy set black male from the evidence.  There is room for a difference of opinion concerning the facts and the reasonable inferences to be drawn from the video and photographic evidence.  Although a reasonable jury might agree with Defendants' position that the quality of the video and photographs was sufficiently adequate to support their independent identifications and the probable cause determination, a reasonable jury could also reach the opposite conclusion – that the video and photographs were so poor that no positive identification could be made therefrom and that there was not probable cause to arrest Mr. Ricks. If the jury comes to the latter conclusion, both the height discrepancy and the poor quality of the video would certainly constitute material facts of which the neutral magistrate would want to know.  *Cf. Wilson v. Russo*, 212 F.3d 781, 788 (3d Cir. 2000) ("Any reasonable person would know that the significant height differential, and the fact that an eyewitness-victim did not identify Wilson, were the kind of things the judge would wish to know.") (internal quotations omitted).

Moreover, although allegations of negligence or innocent omission are insufficient to sustain an unlawful arrest claim, recklessness may be inferred from omission of facts that are clearly critical to a finding of probable cause. *Bruner v. Baker*, 506 F.3d 1021, 1026-27 (10th Cir. 2007). If a jury finds that the quality of the video was so poor as to vitiate probable cause, it could similarly infer that Defendant Martinez was reckless in failing to include them in the affidavit. Therefore, a question of fact exists as to Defendant Martinez's state of mind, precluding summary judgment.

Defendants' reliance on the holding of *Wilson v. Russo*, 212 F.3d 781 (3d Cir. 2000), is unavailing. In *Wilson*, one of the eyewitnesses made a positive identification of the plaintiff from a photographic array as the robber with a high level of certainty. *See id.* at 791. The officer omitted from the warrant affidavit, however, that another eyewitness was unable to identify the plaintiff from that photographic array. *See id.* The officer also omitted that the eyewitnesses said the robber was between 6'3" and 6'5" tall, while the plaintiff was four to seven inches shorter. *Id.* Finally, the officer misrepresented that another witness, who saw the plaintiff in the shopping center around the time of the robbery, gave a time when the robber would have been in the robbed store. *See id.* The Third Circuit concluded that the omitted exculpatory facts were not sufficient to vitiate probable cause in light of the strong inculpatory evidence of the one eyewitness's positive identification of the robber with a high level of certainty coupled with another witness placing the plaintiff in the area near the time of the robbery. *See id.* at 791-92. Indeed, like the *Wilson* court, other courts generally have placed great weight on the positive identification by a victim when officers have no reason to disbelieve him or her, concluding that a height discrepancy alone, which

may be prone to error, is insufficient to vitiate probable cause.[7]

The facts here, however, are sufficiently different from *Wilson* and like cases that the balancing test does not weigh in favor of finding probable cause as a matter of law.   In this case, both eyewitnesses described the robber as 6'5" and "tall," respectively.   No reasonable person would generally ascribe these descriptions to a man who is merely 5'7."   The discrepancy is a full 10 inches – far more notable a discrepancy than in the *Wilson* case.   Furthermore, the clerk who had the best view of the robber in this case did not identify Mr. Ricks from a photographic array. The only positive identifications of Mr. Ricks were made by two people based on the same video. The video is "less than sterling" and blurry regarding the robber's facial features and the photographs taken from the video are very grainy and blurry, facts that significantly diminish the weight to be given the non-eyewitness identifications.   Unlike in *Wilson* and similar cases, a jury could find that no reasonable person could make a positive identification from the video and photographs.   Consequently, viewing all the inculpatory and exculpatory facts together, a jury could reasonably conclude that the exculpatory facts are strong enough to undermine a finding of probable cause.

Consequently, a jury must determine the degree to which the quality of the video and

_____

[7] *See*, *e.g.*, *Tangwell v. Stuckey*, 135 F.3d 510, 516-20 (7th Cir. 1998) (holding that officer was entitled to qualified immunity, despite apparent disparities between weight and age of individual who victim previously described as her attacker because victim subsequently positively identified plaintiff as her attacker to police and "the law is clear that a believable victim's single identification can provide the basis for probable cause"); *Lallemand v. Univ. of Rhode Island*, 9 F.3d 214, 217 (1st Cir. 1993) ("The discrepancies concerning the assailant's first name, hair style, dormitory and height are trivial, given their nature and the positive identification of [plaintiff] by [the victim]."); *Gramenos v. Jewel Cos., Inc.*, 797 F.2d 432, 438-39 (7th Cir. 1987) (holding that trustworthy witness's identification of alleged shoplifter established probable cause despite fact that police had information that might lead a jury to conclude that other shoppers had mistaken suspect's arrest for that of some other person because "[e]yewitness descriptions are notoriously full of inaccuracies").

photographs undermines the identifications made by the non-eyewitnesses, and whether, when the omitted exculpatory information is included in the affidavit with the information about Ms. Padilla's inability to identify Mr. Ricks as the thief, the probability that Mr. Ricks committed the crime is substantial or insubstantial enough to confirm or vitiate probable cause.  *Cf. Maxwell*, 998 F.2d at 435 ("To the extent that the presence or absence of probable cause turns on the resemblance of Maxwell to the descriptors and photograph of the fugitive Moore, the question necessarily becomes a factual one for the jury.   In this regard, we are unable to say that a jury could not reasonably conclude on these facts that the discrepancies are too significant to support a finding of probable cause.") (internal citations omitted).  *See also Asher v. Pacific Legends West Condo. Ass'n*, 463 Fed. Appx. 630, **1 (9th Cir. Dec. 22, 2011) (unpublished opinion) (reversing district court's ruling granting officers qualified immunity, holding that probable cause to arrest plaintiff was lacking because poor quality of surveillance video made identification based on it improbable, and remanding for trial); *Sornberger v. City of Knoxville*, 434 F.3d 1006, 1014-16 (7th Cir. 2006) (holding that genuine issues of material fact existed as to whether arresting officers had probable cause to make arrest, precluding summary judgment on false arrest claim in favor of officers on qualified immunity grounds, in light of inconclusive nature of bank surveillance footage and difference between specific description of bank robber and actual appearance of arrestee).

        The Court further concludes that Defendant Martinez is not entitled to qualified immunity on Mr. Ricks' unlawful arrest claim.   The law was clearly established at the time that an officer is not shielded from liability for a Fourth Amendment violation if, in support of an arrest warrant, he knowingly, or with reckless disregard for the truth, omits from the affidavit information that, if included, would have vitiated probable cause.  *Taylor*, 82 F.3d at 1562.   To survive the qualified

18

immunity defense, however, Mr. Ricks must demonstrate more particularly that reasonable officers confronting the specific facts and relevant law in this case would have known that their conduct violated Mr. Ricks' Fourth Amendment rights.  *See Maxwell*, 998 F.3d at 435.  At this stage, the Court must answer this question viewing all facts and inferences in the light most favorable to Mr. Ricks, and thus, the Court must answer the question considering that the video and photographs were of such incredibly poor quality that no reasonable person could have positively identified Mr. Ricks therefrom.  In light of such circumstances, a reasonable officer would have known that omitting the material facts of the height discrepancy and poor quality of the video would have violated Mr. Ricks' Fourth Amendment rights because, if they were included, they would have vitiated probable cause to arrest Mr. Ricks.  Defendant Martinez is therefore not entitled to qualified immunity on Mr. Ricks' unlawful arrest claim.  *Cf. id.* at 436 ("Because we have already established that the conclusion by the three officers concerning the existence of probable cause may be found to be objectively unreasonable, they are not entitled to qualified immunity at this juncture.").[8]

### b.     Excessive Force (Count 1)

Claims of excessive force are analyzed under the objective reasonableness standard of the Fourth Amendment.  *Graham v. Connor*, 490 U.S. 386, 395-97 (1989).  The reasonableness of the officer's belief as to the appropriate level of force should be judged from the perspective of an officer on the scene, rather than with the 20/20 vision of hindsight.  *Id.* at 396.  Among the

---

[8] Plaintiffs bring both a claim for unconstitutional arrest (Count 1) and unconstitutional detention (Count 2) against Defendant Martinez.  Both claims, however, arise from the same facts surrounding Defendant Martinez's arrest of Mr. Ricks.  Mr. Ricks does not allege a detention caused by Defendant Martinez separate from his arrest.  The Court will therefore dismiss the unconstitutional detention claim in Count 2 against Defendant Martinez as duplicative.  Mr. Ricks' unconstitutional arrest claim (Count 1) against Defendant Martinez will remain in the case.

factors that courts should consider in determining whether a police officer applied excessive force are (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others, and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.   *Id.* at 396.

Inherent in an officer's authority to make an arrest or detention is the authority to use reasonable force to effectuate the arrest or detention.   *See Muehler v. Mena*, 544 U.S. 93, 98-99 (2005).   As the Tenth Circuit explained:

> [T]he excessive force inquiry evaluates the force used in a given arrest or detention against the force reasonably necessary to effect a lawful arrest or detention under the circumstances of the case. Thus, in a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or the detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.

*Cortez v. McCauley*, 478 F.3d 1108, 1126 (10th Cir. 2007).

It is undisputed that, during Mr. Ricks' arrest on September 24, 2010, the officers did not draw their weapons.   Nor is there any other evidence of injury or excess force used against Mr. Ricks other than the force, like handcuffing, that is reasonably necessary to execute an arrest.

Plaintiffs nonetheless contend that the officers drew their weapons in the presence of Mr. Ricks' children on September 29, 2010, during the course of the arrest of Ms. Engel, the children's mother.   In Count 1 of Plaintiffs' Amended Complaint, however, Plaintiffs only make allegations regarding the September 24, 2010 arrest of Mr. Ricks.   There is no mention in the Amended Complaint to give Defendants fair notice that Plaintiffs' excessive force claim is based on the officers' display of weapons during the September 29, 2010 arrest of Ms. Engel in the presence of her children.   *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (noting that statement of claim under Federal Rule of Civil Procedure 8(a) must give defendant fair notice of what

plaintiff's claim is and grounds upon which it rests).

A plaintiff nonetheless "should not be prevented from pursuing a claim simply because of a failure to set forth in the complaint a theory on which the plaintiff could recover, provided that a late shift in the thrust of the case will not prejudice the other party in maintaining its defense." *Green Country Food Mkt., Inc. v. Bottling Group, LLC*, 371 F.3d 1275, 1279 (10th Cir. 2004). Here, however, Plaintiffs have not requested leave of the Court to amend their complaint to add the factual allegations regarding the September 29, 2010 arrest to support their excessive force claim. *Cf. Cozzarelli v. Inspire Pharmaceuticals, Inc.*, 549 F.3d 618, 630-31 (4th Cir. 2008) (explaining that request for leave to amend raised only in footnote of response to defendants' motion to dismiss did not qualify as motion for leave to amend and thus district court did not err in declining to grant motion to amend that was never properly made).   Moreover, even if their response brief could be construed as a request to amend, the Court would deny that request as untimely and prejudicial. The Court already had previously granted Plaintiffs leave to file an amended complaint in this case and the time for filing additional amendments, as set forth in this Court's scheduling order (Doc. 24), had long since passed at the time Plaintiffs filed their response.   Plaintiffs made the additional factual allegations only in their response to a summary judgment motion based on qualified immunity.   Allowing Plaintiffs to amend their complaint at this late juncture would result in prejudice to the Clovis Defendants.   The Court will therefore not consider Plaintiffs' new allegations and will grant the Clovis Defendants summary judgment on Plaintiffs' excessive force claim in Count 1.   *See Viernow v. Euripides Dev. Corp.*, 157 F.3d 785, 800 (10th Cir. 1998) (rejecting plaintiffs motion to amend 19 months after filing of complaint and after defendants filed summary judgment motion because of prejudice to defendants in having to defend against "moving target" complaint).

21

2.        **State Law Claims**

Plaintiffs allege the following state law tort claims against one or more Defendants: negligence, negligent failure to supervise and to train, assault, wrongful arrest and false imprisonment, malicious abuse of process, intentional infliction of emotional distress, and negligent infliction of emotional distress.   The New Mexico Tort Claims Act ("NMTCA") provides the exclusive remedy for a state tort action brought against a governmental entity or public employee.   *See* N.M. Stat. Ann. §41-4-17 ("The Tort Claims Act . . . shall be the exclusive remedy against a governmental entity or public employee for any tort for which immunity has been waived . . . .").   The NMTCA retains governmental immunity for governmental entities and any public employees acting within the scope of their duties, except for eight enumerated classes of activity, including certain unlawful acts by law enforcement officers.   *See id.* §41-4-4 (granting immunity from tort liability for "governmental entity and any public employee while acting within the scope of duty . . . except as waived by . . . Sections 41-4-5 through 41-4-12"); *Cole v. City of Las Cruces*, 99 N.M. 302, 303 (1983).   As to torts committed by law enforcement officers, the NMTCA waives immunity in the following circumstances:

> for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. Stat. Ann. § 41-4-12.   To state a tort claim under the waiver of immunity set forth in Section 41-4-12, a plaintiff must show "that the defendants were law enforcement officers acting within the scope of their duties, and that the plaintiff's injuries arose out of either a tort enumerated in this section or a deprivation of a right secured by law."   *Weinstein v. City of Santa Fe ex rel.*

*Santa Fe Police Dep't*, 1996-NMSC-021, 121 N.M. 646, 649.   A police officer's failure to perform a statutory duty may serve as the foundation for a claim under Section 41-4-12.   *See id.* at 654.

### a.    Lack of Tort Notice Fatal to Claims against City of Clovis but not to Claims against City's Employees

The Clovis Defendants contend, and have filed an affidavit in support thereof by the City Clerk of the City of Clovis (*see* Clovis Defs.' Mem. Br., Ex. B (Doc. 49-1)), that they did not receive notice of the tort claims arising in this lawsuit until June 14, 2011, when the lawsuit itself was received by the City of Clovis, approximately eight months after the events giving rise to this lawsuit occurred.   The Clovis Defendants argue that such notice was untimely under the NMTCA, and thus, Plaintiffs are barred from bringing their state law claims against them. Plaintiffs neglected to raise any factual or legal arguments to refute this contention, but state in a footnote that they "agree to dismiss each of their state tort claims against the City Defendants without prejudice."   (Pls.' Resp. (Doc. 55) at 8 n.3.)

Section 41-4-16 of the NMTCA requires that written notice stating the time, place and circumstances of the loss or injury and indicating that there is a likelihood that litigation may ensue as a result of the incident must be given to the state or local public body within 90 days of the incident.   *See* N.M. Stat. Ann. §41-4-16(A); *Dunn v. State ex. rel. Taxation & Revenue Dept.*, 116 N.M. 1, 3-4 (Ct. App. 1993) (citing *Smith v. State ex rel. New Mexico Dept. of Parks & Recreation*, 106 N.M. 368, 371 (Ct. App. 1987)).   The failure to comply with the notice provisions of the NMTCA will result in dismissal of any claims under the NMTCA against the governmental entity, unless the governmental entity had actual notice of the occurrence.   *See* N.M. Stat. Ann. §41-4-16(B); *Dunn*, 116 N.M. at 3.   The defense of lack of proper notice, however, does not apply

23

to public employees.   *Dunn*, 116 N.M. at 4.

In this case, Plaintiffs offer no facts or legal argument to show that they complied with the notice provisions of the NMTCA as to the City of Clovis.   Based on the Affidavit filed by the City Clerk of the City of Clovis, the Court finds that Defendants met their burden to show that more than 90 days passed from the date of the occurrence of the incident giving rise to this litigation to when the City of Clovis had notice that there existed a likelihood that litigation might ensue.   The Court therefore concludes that the City of Clovis was not provided timely notice under the NMTCA, and thus, all state tort claims brought against the City of Clovis must be dismissed with prejudice.   *Cf. Dutton v. McKinley County Bd. of Comm'rs*, 113 N.M. 51, 52-53 (Ct. App. 1991) (holding that, after defendants made prima facie showing that notice requirement of NMTCA was not met, plaintiff failed to demonstrate existence of triable factual issue to survive summary judgment because plaintiff did not give timely notice and county did not have timely actual notice of existence of likelihood that litigation may ensue).   The only claims brought against the City of Clovis are state law tort claims, so the City of Clovis will be dismissed from the case.

This conclusion, however, does not apply to the remaining state tort claims brought against Defendants Martinez and Romero, because the NMTCA notice defense does not apply to public employees.   *See Dunn*, 116 N.M. at 4; *Frappier v. Mergler*, 107 N.M. 61, 65 (Ct. App. 1988) (notice requirement of NMTCA inapplicable to public employees).   The Court must therefore turn to the merits of the state tort claims alleged against them.

### b.      Negligence (Counts 3 and 5)

Although Section 41-4-12 of the NMTCA waives liability for certain torts committed by law enforcement officers, it does not waive a law enforcement officer's immunity in an action for negligence standing alone.   *Dickson v. City of Clovis*, 2010-NMCA-058, ¶ 19, 148 N.M. 831.

Immunity is waived for negligence under Section 41-4-12 only if the negligence caused an enumerated tort or violation of rights.   *Id.* ¶ 18 (quoting *Lessen v. City of Albuquerque*, 2008-NMCA-085, ¶ 35, 144 N.M. 314).   However, "allegations of negligence based on one of the torts specified in Section 41-4-12 are appropriate only when a law enforcement officer's negligence allegedly caused a third party to commit one of the enumerated intentional acts."   *Id.* ¶ 20.   Consequently, the NMTCA does not provide immunity to law enforcement officers whose negligent supervision and training of their subordinates proximately causes the commission by the subordinates of the torts of assault, battery, false arrest, and malicious prosecution.   *Ortiz v. New Mexico State Police*, 112 N.M. 249, 250 (Ct. App. 1991).   *See also Weinstein*, 121 N.M. at 653 (citing *Ortiz* with approval).

In this case, Plaintiffs' negligence claim against Defendant Martinez fails because it is based on a theory in which Defendant Martinez's alleged negligence caused himself, not a third party, to falsely arrest Mr. Ricks.   The NMTCA does not waive immunity for this type of negligence claim against Defendant Martinez, and therefore, he is entitled to summary judgment on Plaintiff's negligence claim in Count 3.

Plaintiffs also allege in Count 5 that Defendant Romero, a law enforcement officer and Defendant Martinez's supervisor, was negligent in his duty to supervise and train his subordinate in proper investigations and that he breached this duty by approving Defendant Martinez's investigation and by allowing it to continue, resulting in a false arrest and prosecution.   (*See* Am. Compl. (Doc. 33) ¶¶16, 45-46.)   Although the NMTCA waives immunity for this negligence theory, Defendant Romero has shown he is entitled to summary judgment on the merits given the lack of evidence demonstrating how Defendant Romero acted negligently to cause the commission

of the false arrest.    A law enforcement officer has the duty in any activity to exercise for the safety

of others that care ordinarily exercised by a reasonably prudent and qualified officer in light of the

nature of what is being done.   *Weinstein*, 121 N.M. at 653 (quoting *Cross v. City of Clovis*, 107

N.M. 251, 253 (1988)).   Plaintiff has presented no evidence or any legal argument to support a

claim against Defendant Romero.   After reviewing the record, the Court finds that there has been

no evidence presented that Defendant Romero reviewed or approved the arrest warrant or affidavit

or otherwise knew the details of and approved Defendant Martinez's investigation, as alleged in

the Amended Complaint.   Nor is there any other evidence showing how Defendant Romero

breached his duty to exercise ordinary care in the supervision and training of Defendant Martinez.

Defendant Romero is therefore entitled to summary judgment on Plaintiff's negligent supervision

claim in Count 5.

### c.        Assault (Count 6)

Plaintiffs assert in Count 6 that Defendant Martinez drew and displayed his firearm during

the course of Mr. Ricks' arrest.   Defendants are entitled to summary judgment on the assault

claim for the same reasons they are entitled to summary judgment on the excessive force claim:    it

is undisputed that, during Mr. Ricks' arrest on September 24, 2010, the officers did not draw their

weapons.

### d.        False Arrest and Imprisonment (Count 7)

In Count 7, Plaintiffs assert that Defendants Martinez and Romero are liable for Defendant

Martinez's unlawful arrest of Mr. Ricks.   "The tort of false imprisonment occurs when a person

intentionally confines or restrains another person without consent and with knowledge that he has

no lawful authority to do so." *Santillo v. N.M. Dept. of Pub. Safety*, 143 N.M. 84, 88 (Ct. App.

2007). The torts of false arrest and false imprisonment are similar in that a false arrest is merely

one way of committing false imprisonment. *Id.* Notably, "[a]n officer who has probable cause to arrest a person cannot be held liable for false arrest or imprisonment, since probable cause provides him with the necessary authority to carry out the arrest." *Id.*

As discussed more thoroughly above, the Court has determined that a question of fact exists as to whether Defendant Martinez knowingly, or with reckless disregard for the truth, omitted material information from the affidavit that, if included, would have vitiated probable cause.  Defendant Martinez's request for summary judgment on Mr. Ricks' false arrest and imprisonment claim will therefore be denied.  Defendant Romero, however, is entitled to summary judgment on this claim because of the lack of evidence showing that he falsely arrested Mr. Ricks or caused him to be falsely arrested.

### e.        Malicious Abuse of Process (Count 8)

Under New Mexico law, the claims of abuse of process and malicious prosecution have been combined to make a combined tort of malicious abuse of process. *See Durham v. Guest*, 145 N.M. 694, 700 (2009). The elements of this combined tort are: (1) the use of process in a judicial proceeding that would be improper in the regular prosecution or defense of a claim or charge; (2) a primary motive in the use of process to accomplish an illegitimate end; and (3) damages.   *Id.* at 701.  Misuse of process can be shown in one of two ways:  (1) filing a complaint without probable cause, or (2) an irregularity or impropriety suggesting extortion, delay, or harassment. *Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, ¶12, 142 N.M. 150.   "[A]n overt misuse of process, such as a lack of probable cause . . . may support an inference of an improper purpose."   *DeVaney v. Thriftway Mktg. Corp.*, 1998-NMSC-001, ¶30, 124 N.M. 512, *abrogated on other grounds by Fleetwood Retail Corp. of N.M. v. LeDoux*, 2007-NMSC-047, 142 N.M. 150, *and overruled on other grounds by Durham v. Guest*, 2009-NMSC-007, 145 N.M. 694.   Probable

27

cause, in the context of a malicious abuse of process claim, is "the reasonable belief, founded on known facts established after a reasonable pre-filing investigation, that a claim can be established to the satisfaction of a court or jury." *Id.* ¶22 (internal citations and footnote omitted).

Defendant Romero is entitled to summary judgment on Plaintiffs' malicious abuse of process claim for a lack of evidence that he had any involvement in causing the judicial proceedings to be initiated against Mr. Ricks.   As to Defendant Martinez, a question of fact exists as to whether Defendant Martinez knowingly, or with reckless disregard for the truth, omitted material information from the affidavit that, if included, would have vitiated probable cause. Defendant Martinez is therefore not entitled to summary judgment on Mr. Ricks' malicious abuse of process claim.

> **f.      Negligent and Intentional Infliction of Emotional Distress (Counts 9 and 10)**

As noted above, the NMTCA provides immunity to public employees unless the Act sets forth an explicit waiver of that immunity. *See* N.M. Stat. Ann. § 41-4-4.   The Clovis Defendants are entitled to summary judgment on Plaintiffs' claims for intentional infliction of emotional distress (Count 9) and negligent infliction of emotional distress (Count 10) because these torts are not among the enumerated torts for which immunity has been waived for law enforcement officers under the NMTCA.   *See* N.M. Stat. Ann. §41-4-12; *Romero v. Otero*, 678 F.Supp. 1535, 1540 (D.N.M. 1987) (holding that NMTCA does not waive immunity of law enforcement officers for intentional infliction of emotional distress claim standing alone); *Weinstein*, 121 N.M. at 653 (holding that family members could not sue for negligent infliction of emotional distress under the NMTCA, because § 41-4-12 did not include that tort).

**B.      Probation Defendants' Motion for Summary Judgment and Supporting Memorandum of Law (Doc. 63)**

     **1.      Section 1983 Claims**

Plaintiffs' Section 1983 claim for unlawful detention against Defendant Queener (Count 2) is based on her alleged actions in arresting or causing Mr. Ricks to be arrested and detained on September 24, 2010, without probable cause, (Am. Compl. (Doc. 33) ¶30), and in failing "to act promptly to release the probation violation hold issued against Mr. Ricks when it was clear that he had not committed any robbery, as the criminal charges had been dismissed for more than one week prior to his release from jail," (*id.* ¶33). Defendant Queener is entitled to summary judgment on the Section 1983 claim because the undisputed facts do not support Plaintiffs' allegations in the Amended Complaint.

First, there is no evidence that Defendant Queener arrested Mr. Ricks or caused him to be arrested on September 24, 2010.   The only evidence is that Defendant Queener was made aware of the arrest on that date.   Mr. Ricks was already being held in jail for the robbery charge when Defendant Queener, on October 5, 2010, filed the Probation Violation Report.   It is undisputed that, when Officer Queener filed the report, she believed that Plaintiff had been arrested after a thorough and lawful investigation, and pursuant to a valid arrest warrant.   Officer Queener acted reasonably in relying on the facially valid arrest warrant in determining that there was probable cause that Mr. Ricks violated the conditions of his release.   Defendant Queener thus acted lawfully in filing the Probation Violation Report.

The relevant question then becomes whether, once the underlying robbery charge was dismissed, Defendant Queener was responsible for any continued seizure of Mr. Ricks without

probable cause.[9]   Where an official, after an initial finding of probable cause, learns of evidence indicating an arrestee's innocence, he may be liable if he fails to apprise the prosecutor or judicial officer of known exculpatory information.   *See Brady v. Dill*, 187 F.3d 104, 114 (1st Cir. 1999). Even assuming Mr. Ricks was in jail or otherwise further seized during the period after the criminal charge was dismissed and when the Probation Violation Report was dismissed, there is no evidence that Defendant Queener caused the continued seizure without probable cause.   Mr. Ricks' bond was set by, and at the sole discretion of, the judge, and at no time did Officer Queener request a bond be placed on Mr. Ricks or have any input into the amount of the bond set. Although Judge Quinn considered the Probation Violation Report when setting the bond, at the time the bond was set, Defendant Queener had probable cause based on the facially valid warrant to believe that Mr. Ricks had violated the conditions of his release.   The District Attorney's Office moved to revoke probation based on the Probation Violation Report the day after Mr. Ricks posted bond and was released from jail.   The District Attorney's Office dismissed the robbery charges on October 14, 2010, and delayed the eight days before dismissing its motion to revoke probation. There is no evidence that Defendant Queener had a role in that delay.   It was clear from her Probation Violation Report that her recommendation to revoke Mr. Ricks' probation was based on the underlying robbery charge.   There would thus have been no reason for Defendant Queener to

---

[9]   Although Defendant Queener filed the Probation Violation Report, she nevertheless at no time placed an Arrest Hold on Mr. Ricks.   Judge Quinn placed the $5000 cash or surety bond on Mr. Ricks.   Two days after the filing of the Probation Violation Report, on October 7, 2010, Mr. Ricks posted bond and was released from jail.   There is no evidence before the Court showing that Mr. Ricks was being held in jail when ADA Pedrick- Chavez filed the motion to revoke probation on October 8, 2010.   Additionally, there is no evidence before the Court showing that Mr. Ricks was in jail during the eight days between when the District Attorney's Office dismissed the robbery charge on October 14, 2010, and when ADA Pedrick-Chavez dismissed the Probation Violation Report and Motion to Revoke Probation on October 22, 2010.   There is therefore no evidence to show that Defendant Queener's actions or failures to act caused Mr. Ricks to be further detained in jail.

believe that, if the underlying robbery charge were dismissed, any further action would have been necessary on her part to resolve the disposition of the Probation Violation Report or the prosecutor's motion to revoke probation.   Moreover, it is undisputed that, once a probation officer files a Probation Violation Report with the court, the court has absolute discretion over the matter. In short, there is no evidence before the Court on which to hold Defendant Queener liable for Mr. Ricks' initial arrest or continued seizure, and she is entitled to summary judgment on Plaintiffs' unconstitutional detention claim in Count 2.

### 2.      State Tort Claims

Section 41-4-3(D) defines a "law enforcement officer" as

> a full-time salaried public employee of a governmental entity, or a certified part-time salaried police officer employed by a governmental entity, whose principal duties under law are to hold in custody any person accused of a criminal offense, to maintain public order or to make arrests for crimes, or members of the national guard when called to active duty by the governor.

N.M. Stat. Ann. § 41-4-3(D).   Only those persons whose principal duties include those of a direct law enforcement nature meet this definition.   *See Anchondo v. Corrections Dep't*, 100 N.M. 108, 109-10 (1983).   A court must look at the character of the principal duties involved, those duties to which employees devote the majority of their time.   *See id.*

The PPD Defendants argue that probation officers are not law enforcement officers within the meaning of the NMTCA, and thus, the waiver of immunity contained in Section 41-4-12 does not allow for state tort suits against them.   Plaintiffs contend that a fact issue exists as to whether probation officers are law enforcement officers.   Plaintiffs argue that a fact issue exists as to whether a principal duty of probation officers is to hold probationers in custody and arrest them. Plaintiffs argue that the cases holding to the contrary are confined to their facts and should not be applied as a blanket rule to all cases involving probation officers.

31

In *Vigil v. Martinez*, the New Mexico Court of Appeals examined whether probation officers met the definition of "law enforcement officer" in the NMTCA.  *Vigil v. Martinez*, 113 N.M. 714, 717 (Ct. App. 1992).   The Court of Appeals examined N.M. Stat. Ann. § 33-1-10, a statute that gives corrections department employees, including probation officers, certain powers of peace officers; an affidavit discussing the principal duties of the defendant, a probation and parole officer; and state personnel office job descriptions for probation and parole officers and supervisors.  *See id.* at 718-20.   The *Vigil* court concluded that probation officers do not devote the majority of their time to "hold[ing] in custody any person accused of a criminal offense" within the meaning of the NMTCA.  *Id.* at 720.   The *Vigil* Court determined that probation officers "supervise" persons that have already been convicted of a crime, not persons "accused" of a crime, and that only a minor incident of their jobs is restricting the movement of clients.  *Id.*   The *Vigil* court similarly concluded that maintenance of the public order is only incidental to the duties of probation officers, relying on N.M. Stat. Ann. § 31-21-4, which sets forth rehabilitation as the chief function of the Probation and Parole Act.  *See Vigil*, 113 N.M. at 720-21.   Finally, relying on the proffered job descriptions, the Court of Appeals noted that arresting persons was not even mentioned therein, and thus is not a principal duty of probation and parole officers.  *Id.* at 721.

The Tenth Circuit in *Trask v. Franco*, 446 F.3d 1036 (2006), addressed and rejected the argument urged here that the *Vigil* case is confined to its facts:

> The New Mexico Court of Appeals has made it clear that probation officers are "not law enforcement officers under Section 41-4-3(D) and therefore the waiver in Section 41-4-12 does not apply to them." *Vigil v. Martinez,* 113 N.M. 714, 832 P.2d 405, 412 (App.1992). Accordingly, the probation officers here are protected by the Act's general grant of immunity.
>
> Ms. Bliss and Mr. Trask nonetheless contend that whether the probation officers' principal duties are those of law enforcement officers is a question of fact. They further maintain that the "principal duties" of a probation officer have changed

since the appellate court's decision in *Vigil.* We are not persuaded, and affirm the
summary judgment on the state-law tort claims.

*Trask*, 446 F.3d at 1048.

None of the evidence in this case refutes the findings made in *Vigil* that the primary duties
of probation officers are to supervise persons that have already been convicted of crimes.   That
this case involves the supervision of a probationer who was also accused of another crime is not
enough to overcome the findings made in *Vigil* that only a minor incident of a probation officer's
job is restricting the movement of clients.   As in *Trask*, Plaintiffs have not presented sufficient
evidence to persuade this Court that the primary duties of probation officers have changed since
*Vigil* or *Trask*.

Defendants Queener and Muller are therefore entitled to summary judgment on all
Plaintiffs' state law tort claims against them because immunity has not been waived under the
NMTCA for probation officers.   Because Defendants Queener and Muller are immune from suit,
the PPD is likewise immune from suit for those claims and entitled to dismissal of the state law
claims against it.   *See Weinstein*, 121 N.M. at 651 (governmental entity could be held vicariously
liable for alleged torts committed by officers *for which immunity has been waived*).

**IT IS THEREFORE ORDERED** that

1.     The Motion for Summary Judgment (**Doc. 48**) filed by Defendants City of Clovis,
Sean Martinez, Roman Romero, and Justin Lavary is **GRANTED IN PART AND DENIED IN
PART** as follows:

a.     Defendants City of Clovis', Roman Romero's, and Justin Lavary's requests
for summary judgment as to all claims brought against them are

**GRANTED**;

b.    Defendant Sean Martinez's requests for summary judgment on Plaintiffs'
claims for excessive force (Count 1), unconstitutional detention (Count 2),
negligence (Count 3), assault (Count 6), intentional infliction of emotional
distress (Count 9), and negligent infliction of emotional distress (Count 10)
are **GRANTED**; and

c.    Defendant Sean Martinez's requests for summary judgment on Plaintiffs'
claims for unconstitutional arrest (Counts 1), false arrest and imprisonment
(Count 7), and malicious abuse of process (Count 8) are **DENIED**.

2.    The Motion to Dismiss Based on Qualified Immunity (**Doc. 50**) filed by
Defendants Elizabeth Queener and Kristy Muller is **DENIED AS MOOT**.

3.    The Motion for Summary Judgment and Supporting Memorandum of Law (**Doc. 63**) filed by Defendants New Mexico Adult Probation and Parole Department, Elizabeth Queener, and Kristy Muller is **GRANTED**.

4.    All claims brought against Defendants New Mexico Adult Probation and Parole Department, Officer Elizabeth Queener, Officer Kristy Muller, the City of Clovis, Sergeant Roman Romero, and Officer Justin Lavary are **DISMISSED WITH PREJUDICE**.

5.    The following claims are hereby **DISMISSED WITH PREJUDICE**:  excessive force (Count 1), unconstitutional detention (Count 2), negligence (Count 3), negligence (Count 4), negligent failure to supervise and train (Count 5), assault (Count 6), intentional infliction of emotional distress (Count 9), and negligent infliction of emotional distress (Count 10).

_____
SENIOR UNITED STATES DISTRICT JUDGE